Good morning, Judge. Good morning. Ira Neville on behalf of City Mortgage Incorporated, the app held on. May it please the Court, Counsel. This case is somewhat unusual in that it involves the plaintiff attempting to vacate its own judgment through a 214-01 petition. What started out as a garden-variety mortgage foreclosure, well somewhat of a garden-variety mortgage foreclosure action because it involves a defendant that's a co-op rather than a condo association. The difference being a co-op is owned by, all the units are owned by the corporation and each owner gets specific shares of that corporation. So we're not foreclosing real property, we're foreclosing personal property, which is the shares. A condo, in other words, there would be title to each individual unit. So that's somewhat unusual in that regard. But I've handled several co-ops over the years. There's not too many out there. And so this, the plaintiff pled specifically for the co-op and understood that this was a co-op and not just a condo. The defendant answered. Judgment was entered without objection. The judgment of foreclosure found that the plaintiff, the mortgage company, had prior and superior interests to that of all of the defendants, Vivian San Juan and I think it's Carlos Basden, Cameron Basden, who were the owners of the shares of the co-op. The matter was set for sale. The sale took place and the sale, the property, the shares were ordered to be transferred to the plaintiff. The order confirming sale was entered and the order confirming sale found that our interest was prior and superior to that of the co-op and that all interests of all defendants, including the co-op, would be terminated and further specifically geared towards co-ops that the assessments wouldn't begin until after the shares of the co-op were transferred pursuant to the order confirming sale, which was entered I believe in August 2010. Unbeknownst to us, right after the case was filed in August of 09, shortly after that, I think it was in November of 09, without knowledge, without any authority apparently, the co-op transferred the shares to the plaintiff, City Mortgage, thereby apparently in their books at least making the plaintiff the owner of the unit. Even though the court had not ordered it, even though the matter had not come to judgment or sale and the case had just been filed, they prematurely transferred these shares. Part of the language in the dex and in the shares themselves is that City Mortgage accept the transfer of these shares in order to be effective. That never happened because we didn't even know about it. But it's significant in that the basis for our 214.01 was newly discovered evidence. It was two parts. One, that we did not find out until the co-op came in after the confirmation took place in August of 2010 that the co-op came in to vacate after the case was essentially over to vacate our orders and say we have a superior interest, which is something that I had never seen before in all my years, that a co-op or a condo association, but a co-op in this case, would have a superior interest to that of the plaintiff. The court found that they did. Didn't they provide you with knowledge in their answer that there were assessments due in every co-op, every homeowner's association, every condo association says the same thing. We're superior. We have an interest in there. But they didn't object when we went to judgment. But the point being you were on notice. Then that would trigger some responsibility to conduct some due diligence. They did claim that they had a superior interest, much like defendants claim that they're not liable on debts, just like every homeowner's association and condo association says, oh, yeah, we're superior. Any interest that the plaintiff takes would be subordinate to our interest. But significantly when judgment was entered, summary judgment was entered, the court found otherwise and entered judgment without objection by the co-op. So like I said, we didn't pay too much attention to it at the time because everybody claims that. And in my experience in 30 years practicing, I've never seen one that was superior. This case proved to be the exception. Again, an unusual case with twists and turns. But they did not object to entry to judgment. They did not raise that issue. Judgment was entered. The court found that the rights of the plaintiff, the mortgage company, were superior to that of the co-op. It wasn't until after confirmation of sale, which is the final order in the case, that they came in to vacate that and say, oh, no, no, we have a superior interest here. And they amended the judgment to say that. They withdrew any objection to their motion to vacate the order confirming sale, which still stands, still is the final order in this case, the GMB versus Marzano case. And that order terminated their interest in there. So we have a conflicting order. But the fact of the matter is that we did not find out until after the case was over. I don't know what we could have done up to that point. Counsel says, oh, there was a lack of diligence. Even your question lends itself to that. But the fact of the matter is that and I refer back to when I said it was significant that they transferred the shares in the GMB versus Marzano case to the GMB versus Marzano case. And the fact of the matter is that they did not notify us of the deconversion that, as we found out in October of 2010, took place in March of 2010. And we were not notified, even though we were the owner. But they claim they did notify you. That's a factual dispute, isn't it? No, no, no, no, no. The association never notified us. There's no dispute that we never got notification of the votes to deconvert or that the notice that it was being deconverted in March of 2010. But isn't that what's claimed in the e-mail from the president? We didn't get that until October of 2010 after the sale was over. You got the e-mail then. Right. But the e-mail referenced we had notified you each and every time we took action on this issue, right? We never received any notice. So that's my point. There's a factual dispute. In the case, they never raised an issue on the motion to 214.01 that, yes, you were notified of this deconversion and sale process. The first time in the affidavit supporting the 214.01 references, the first time City Mortgage or counsel for City Mortgage myself was notified was in October of 2010 after the case was over that it was deconverted, which leads itself to the next question. Is there even a co-op at the time when they came in to vacate and amend, or was it now a condo association? The deconversion took place well before that. So I think that what we had here is clearly plaintiffs did not know about this deconversion. Certainly was not aware that there was over $50,000 in bank assessments. But the key, the gravamen of our argument is that the deconversion process essentially meant that we purchased nothing at the judicial sale because we had to now buy back the unit for over $167,000, a unit which we had figured was worth about $25,000 to $30,000 as it was. So had we known that, and I think the basis, the Brockmeyer v. Duncan case, the Alfano case, the Cipriani case that I cite in my brief, all lend itself to newly discovered evidence, which clearly a 214.01 can be based upon. But my point is, is that it's the plaintiff's motion. Do we need to show a meritorious defense? I don't know that we do. As the Court found, we didn't state a meritorious defense that the Court tactically, I think, on the tactical part of it, not on the merits of it, found we were deficient in our 214.01. But I think that if the Court was to use its equitable jurisdiction and equate newly discovered evidence with the meritorious defense, I think clearly what could be more meritorious, more, as the newly discovered evidence, would be that it wasn't even a co-op anymore. It wasn't even a condo. It was now condos, and that what we bought was nothing. We had to buy it back from them for up to $167,000. Wouldn't the question be, though, then, would the Court have ruled otherwise? Not would the plaintiff take a different action, but would the Court have ruled otherwise? And why would the Court care if you were getting a good bargain or not getting a good bargain, or what the economic dynamics of the issue were? That's a fair question, but I think the answer is, is that the Court would care because it would wonder, well, wait a second, is this the co-op, or is it now a condo association? I think it was entitled to know that it was deconverted, which would have put certainly us on notice that there was a different entity standing before the Court. Maybe they're standing. Maybe there wasn't standing. I don't know. But the fact of the matter is, it should have been disclosed to the Court that it has now been deconverted back in March of 2010, way before the case was confirmed, way before the case was terminated, and we didn't discover it until October of 2010 after the sale had been confirmed. What's the authority for the duty to inform the Court of that fact? Standing? I mean, I think you have a duty to stand before the Court, and you have a duty to have standing. If you don't have standing, or if the entity that you are representing has changed, I think you need to substitute the parties. I will tell you that when I represent plaintiffs in foreclosure actions, and I represent many, and have done so for many years, when the entity changes, and we know now with all the new assignment issues and everything else, you better come before the Court and disclose and prove your standing that you are the holder of the interest. You step back and you go even one step further, it's do they have the standing to even raise the objection to our motion to vacate since they weren't the owner of the unit. I mean, it doesn't make sense except for they want a windfall here. It's about dollars. I think that's the clear impression here is they're not interested in a city mortgage being a happy owner of one of these now condos, but I think it's a question that they want to reap a windfall here. But the fact of the matter is they had a duty to disclose to the Court, if nothing else, that it is now a different entity that is not the co-op anymore, that it is now the condo association, and that the interests have changed. Now, my question would be also is assuming that it is now a condo, there has to be a deed of conveyance showing the real estate has been transferred now to the owner because it's not part of the co-op anymore, and it's not shares. But the fact of the matter is that the shares were transferred prematurely. They weren't transferred after the sale was confirmed in August of 2010, and the shares themselves and the rules say that the city has to accept them. But it was done prematurely. Nothing was issued after the fact. They were done pursuant to your complaint for foreclosure. There's no question. They don't have the authority to decide who is entitled to the ownership shares. I think they have to wait for a court order to that effect. But what it does is it illustrates, it's a good point, but it illustrates the fact that this was all about money. They couldn't transfer this to the city mortgage fast enough because they wanted the dollars. But the fact of the matter is, and the bottom line is, newly discovered evidence. If this isn't newly discovered evidence that you went to sale and you bought nothing because you didn't know that the units had been converted prior to the entry of the orders, prior to them coming into court with no disclosure, that it is now a condo instead of co-op, and you actually, we have to buy in to buy our property back. I can't imagine what would be newly discovered evidence. We didn't know. We know we would not have proceeded as we did. But the fact of the matter is, is that when they came in to amend and say, oh, yeah, by the way, we're superior, it was after the case was over. Confirmation had taken place. I don't know what choice we would have done. What else could I have done except come in to say, gee, we want to vacate our own judgment because we didn't know we actually have nothing. And that their rights are superior because they didn't come in until after the fact to assert the superiority of their rights, notwithstanding what their answer says. They didn't object to the entry of the judgment. So I think in that regard, we were diligent. We did everything that was necessary to come in. I don't know what else we could have done. Our hands were kind of tied because they didn't come until after the sale was confirmed. And the sale confirmation order, which still stands, says we're superior. So you've got a conflict in those two orders, and I don't know how you can reconcile that under the circumstances. But I think that Judge Reyes, when he came in to decide what we're going to do here, he just absolutely said, no, you haven't shown me a meritorious defense. And what I took that to mean is he says, you need to have a good reason to come in. There are no standards for plaintiffs to come in on to vacate their own judgments that I found, except the Household v. Jewel Lewis case, which happened to be my case as well. That was pre-judgment, though, wasn't it? I'm sorry? That was pre-judgment. No, that was pre-confirmation. Pre-confirmation. And that case was just before Judge Reyes. Again, that was my case. I didn't handle it in the Supreme Court, but I handled it in the trial in the appellate court. And that was a little different, but the reasoning is the same. The Supreme Court comes. The plaintiff is the master of its complaint. It controls the litigation. And as such, I should be able to come in, and I think it's questionable whether I need to even plead a meritorious defense since I control my own litigation, and I'm the master of my complaint, whether I needed to come in with that. But I think that clearly if Judge Simcoe meant meritorious defense equals newly discovered evidence, this has to be the case. The alternative argument, you're asking that we carve out an exception under 214.01 for a prevailing party to come in to vacate its own judgment, right? Well, I suppose that it may not be an exception, but I think that it needs to be fine-tuned to say instead of meritorious defense, it needs to be a good reason, likelihood of success in the merits. But how can you have a meritorious defense to your own action? Or claim. Or claim. I think it's a legal impossibility. So I think that Judge Simcoe may have meant, but I think that he only ruled on the technicalities. You didn't state a meritorious defense, therefore you didn't meet a threshold issue of 214.01. So under the circumstances, I think newly discovered evidence would stand in for meritorious defense. In other words, Judge Simcoe wanted a good reason and he just technically said with that. You didn't provide one. You didn't provide one because the statute says you've got to come in with it. It's a threshold issue. Why don't you wrap up so you can save some time for rebuttal. And lastly, but essentially you've heard it all. I mean, it's a simple issue. It's a basic issue. Was that a good enough reason? Was that newly discovered evidence? It wasn't until after the fact we had no choice. We couldn't come in earlier because they hadn't raised the issue before sale confirmation. Under the Marzano case, the confirmation is the final order. Again, Marzano being my case, not that I'm any appellate court magnate, but in this area I've been around. And the fact of the matter is, is that the final order, they came in after the final order. That we had no choice but to come in on 214.01 to say, gee, we didn't know because they didn't disclose it, which I think they had a duty to do, Your Honor. I think they had a duty to tell the court, judge, we have a different defendant now. We're a condo association. We're no longer the co-op. Thank you very much. Good morning, Your Honors. Christopher Hines on behalf of the defendant Appalee 5000 East End Avenue Building Corporation. May it please the court, counsel. I think what plaintiff has just demonstrated to you was that the only reason that they're before Your Honors is because it was essentially a failed business endeavor. And it wasn't necessarily a lack of appreciation of the obligations attendant with ownership interests of the shares. It was rather a lack of appreciation of the amounts associated with those obligations. And I think counsel did a fairly good job of reciting the facts. And they are quite nuanced here because we're not dealing with a straightforward foreclosure of real estate because we are dealing with a co-op. And as Your Honors know, a co-op is fundamentally different than a condominium in that you own shares, which entitles you to the ownership of the corporation. And part and parcel to that and attendant with that is the ability to negotiate and I think we need to be very careful in understanding and appreciating that distinction. And the reason that that is important is because towards the end of the presentation, counsel for plaintiff had said that the defendant had an affirmative obligation to come before the court and advise the court that this was now a completed conversion and as a consequence, this is no longer a co-op, it's a condo. There's nothing in the record that suggests that. The email that they attached to their 1401 motion simply says that a vote in March of 2010 was taken to start the process. And I can represent to Your Honors as being a part of that process, my law firm handles this, it is a process. It's not simply you take a vote, amend the bylaws and then the entire co-op is now converted to now out there. Shares need to be taken back, they need to be valued and typically the value of those shares are based upon what would be the reasonable value of the unit. But then once that happens, shares are canceled and then there is a deed that is issued. Because again, the corporation owns the unit, the borrower in this instance didn't own the unit and by virtue of their judgment of foreclosure, the lender doesn't own the unit in this particular case. So we need to be very careful about that. And because of that, it's very important to understand again, the distinction between the obligations of being a judgment creditor and the, I guess the amounts associated with those obligations. One thing that, actually there are a couple things that plaintiff really didn't hit on and I think it's very critical, particularly to Justice Sterba's point about whether lender was on notice prior to the entry of the judgment of foreclosure and indeed prior to the entry of the order confirming the sale. And I use that term loosely because there technically wasn't a sale and I do want to bring your Honor's attention to, there was a point in my brief where I inadvertently referred to the stock as a sale of stock. It was a transfer of stock. There was nothing that was sold here because indeed they can't do so. But prior to the, prior to the outset of the case, lender was a party to a recognition agreement. The recognition agreement is between the certain rights of the parties and one of those rights is the co-op's right of any disposition of the shares to take out of that the monies that would be used to satisfy any back assessments, if you will. Also, the borrower and the co-op are parties to the proprietary lease agreement. The security agreement to which lender was a party with the borrower outlines all of the quote unquote  which again outlines all of the obligations of the holder of the shares. So the proprietary lease agreement isn't a part of the record. It wasn't made a part of the complaint. But there are certain ramifications of the obligations that are reflected in that proprietary lease agreement. Namely, it obligates the borrower to pay assessments for the common elements within the co-op. The corporation. After they had filed their complaint and as Justice Sturba identified, we filed an answer and we filed an affirmative defense and we attached to that answer, one, the recognition agreement, but two, also an affidavit which set out the fact that there were $19,000 that were owed to the co-op based upon the amount in which the borrowers slash tenants were in arrears for their failure to pay assessments. Counsel says, well, co-ops do that all the time. Well, there actually is a reason for that. It's because again, it's the obligation of the co-op and this was set out, and it's not cited in our brief, but it was set out in Sinisippi, which is a second district case in 1983 as well as from this district case in Harper Square in 1999 that a borrower slash tenant is responsible for these assessments. So they knew at the time that we'd filed our answer and our affirmative defense is that there was a claim to back assessments. Interestingly, after the judgment of foreclosure was entered, and they referred to this in the brief, and it's a matter of public record, the co-op filed an eviction proceeding. There is now a pending action in the municipal district, a forcible entry and eviction action or forcible entry and detainer action against city mortgage for these back assessments. They knew at the time that we'd filed this, and critically, this was filed in April of 2010. This was filed before the judicial sale. This was filed before they moved for the confirmation of sale, and this was filed before the order confirming the sale. So they knew that the co-op had established at least a claim against city mortgage for the payment of these back assessments. It's the obligation. So I really don't think, I don't think it's necessarily or complete in a complete analysis to simply say, Your Honor, we didn't know of this obligation. And if it was brought to our attention, this is what co-ops always do. It was brought to our attention. What about his argument about a condominium and a deed? I'm sorry, Your Honor? What about his argument about a condominium and a deed? Well, that assumes that there is a deed that is a tenant with the condominium and that assumes that there has been a conversion from the co-op to the condominium. Well, that's what I'm actually asking you. And critically, again, and this is what's interesting about the order confirming the judicial sale, because it really does contemplate the, I guess, an ownership right in the real estate. And usually a tenant with that right in foreclosure actions, you have a sheriff's deed that issues. Right. There's no deed here. There's no deed attached to the 1401. There's no deed of record. And I think that's significant, again, because it's not as if the conversion or deconversion from a co-op to a condominium is done simply by vote or of a supermajority vote of the board. It's a process. What was the conversion completed? It hasn't been completed, Your Honor. It's still in the process. It's still in process. Why were the 66 shares transferred before there was an order entered confirming the sale? To the co-op. And there were many borrowers or tenants within the co-op that had been in arrears. And if they're in arrears, there needs to be some sort of procedure that adjudicates claims to the shares. This happened to be one of them. The co-op, after the complaint was filed, it's two counts to the complaint. One count is the foreclosure and the second count is a directive to the co-op to transfer the shares. To the co-op, they transfer the shares. They facilitate the foreclosure, right? Absolutely. And it really doesn't matter when the shares were transferred because, again, the obligation is still the same. Whether the shares were transferred in November of 2010 or whether they were transferred after the entry of the order confirming the judicial sale, the effect is the same because they're going to be on the line for the assessments. It's the holder of the shares that takes the place of the tenant slash borrower under the proprietary lease agreement. So, again, and that's why I want to emphasize, and it's a critical distinction, to plaintiff, they attempt to characterize the quote-unquote newly discovered evidence as an obligation to have to pay. Well, the obligation was set forth from the outset of the case. It's really the amount associated with that obligation. And it's significant that they never objected to the co-op's 1401 motion, which sought to modify the judgment of foreclosure, which would have simply made it in conformance with the recognition agreement in terms of who is responsible for what and priority and things attendant with those issues. They didn't seek to object to the 1401. They knew that there was an obligation at that time. They knew that the co-op was asserting a claim based upon that obligation because, again, we know that there was an eviction proceeding that was instituted four months before that. They never objected. They never objected to the entry of the September 2nd order, which modified the judgment of foreclosure. It wasn't until two months after that order was entered until they found out that, well, it's not necessarily the $30,000 in back arrears for which we would be responsible. We now think it's well in excess of $100,000. And the difference was the special assessment that is levied against the tenants within the co-op, which is part of the process of the deconversion. And the way that they come up with the amount of the special assessment is it's based upon evaluation of the actual unit itself. And, again, the Sinisippi case in the second district and in this district's case of Harper Square actually lays out the process. So the question becomes how does an amount based upon an obligation, which you assume as a judgment creditor constitute newly discovered evidence such that if presented to the trial court, the trial court wouldn't have entered the judgment? And, again, Justice Sterba's point was right on point. That is the threshold issue whether if presented to the trial court, the trial court would have vacated the judgment of foreclosure. Okay, so is $5,000 not newly discovered evidence? Is $30,000 not newly discovered evidence? But $100,000 is newly discovered evidence? I submit to the court that it's not the trial court's domain, nor is it its obligation to be inquiring of every plaintiff before it to ensure that they are, in fact, making a sound business decision. And the policy considerations of this case are pretty important because what plaintiff is advocating is an ability of any lender after the fact, after foreclosure and judgment, after confirmation of sale, and predictably after an eviction, particularly if we're dealing with a personal residence, to come back and say, I really didn't appreciate the amounts that I would have to assume. I didn't really appreciate the obligations upon me as a judgment creditor. You'd see this all the time if there were back taxes due. Or, say, for instance, if the land was contaminated and it was just brought to the lender's attention and they have to now clean it up, they could then go back to the trial court and say, Judge, I really didn't know this because what would be a $100,000 judgment has now turned into a $2 million obligation. That's not the trial court's domain. And that's not the trial court's responsibility. Plaintiff is correct. They are essentially master of their litigation domain. They're the ones who drive the case. They are the ones who need to appreciate the inherent risks. There are benefits associated with assuming a judgment. There are also inherent risks involved as well. And you can't come in after the fact simply because they believe that the amounts were excessive. Let me ask you, did Building Corporation notify City Mortgage of the transfer of the 66 shares? And if so, how and when did they do so? And did they also supply them with notice of the meetings in which this conversion was occurring? As to the last component of that, Lee Cummins, the president, City Mortgage was surprised of everything having to do with the process itself. Unfortunately, I can't answer the question, and I don't want to misrepresent the court something that I really don't know about. I do know that, again, the shares were transferred. But, again, it was because the plaintiff had requested that. It's almost like seeking a breach of contract. Seeking $50,000, having a defendant pay the $50,000 prior to judgment, and then after you receive judgment say, Judge, they shouldn't have paid me beforehand. Well, this is what you asked for, and this is what we're giving you, and you're on your head. They know they received it. You do it internally. They know that they received as of the August 10th, or excuse me, the August 4th, 1401 motion. And, again, that motion was filed significantly before the order confirming the sale. They knew that. And, again, they never protested at the entry of the order confirming the sale. They never protested at the hearing of our 1401 and, indeed, at the entry of the order modifying the judgment of foreclosure. And, in fact, in their brief, they acknowledge that based upon the modification of that order, it then obligates them to pay back assessments. A couple of other things, and I know my time is running short. I do want to hit on some procedural things. Typically a 1401 is accompanied by an affidavit, and the statute requires that. This was not accompanied by an affidavit. There are many references to the record that simply aren't incorporated into the 1401, aren't incorporated into the reply appropriately. Did the attorney for city mortgage attach an affidavit? He attached an affidavit. They filed the affidavit and attached it to the reply. And we had argued on a response that there was no affidavit, and, of course, that's what it was. I don't want to exalt form over substance, but I do believe that may be a critical component. But, again, there's also a waiver issue here based upon their failure to object. And this really drives home the point of the distinction between not knowing about an obligation, of which they did know, and not knowing about the amounts attendant with that obligation. They knew at the September 2nd order, excuse me, at the hearing on September 2nd that modified the foreclosure judgment that by way of the modification there would be an obligation imposed upon them. Again, it wasn't until they found out two months later that there was a special assessment that was levied until they came back into court. Well, there's two separate issues here, right? Yes. The special assessment fees and the conversion issue, right? Well, actually, no, Your Honor, because the special assessment fee actually only comes about by virtue of the process of converting to condominiums. But there's still assessments that continue to run today. And, again, at the time that we filed that answer, there was $18,000 owed. At the time we filed the eviction, there was $31,000 owed. I can tell you with the special assessment today, it's now $180,000. But that's, again, the entire value of the unit. And this is something about which they didn't learn until October. But, again, they knew of the obligation. And that's not newly discovered evidence, at least of the kind that would typically support a basis to vacate a judgment under 1401. So I would submit to Your Honors that it is not the domain of the trial court to be inquiring of litigants' interests, to be inquiring of the consequences, and to be inquiring of whether this is something that they truly intend before judgment is entered. That is the obligation of the plaintiff. And 1401 doesn't relieve you of those consequences, Your Honor. This was not newly discovered evidence. This is something about which they knew. They were attempting to turn back the clock. And we submit that there is nothing in the record to suggest that the trial court abused its discretion. And for those reasons, we'd ask that this court affirm the trial court's decision, refusing to vacate the judgment and denying the 1401. Thank you. Thank you. Thank you. Briefly, the eviction action that they filed, and I don't recollect as I stand here when they filed it, the eviction actions are possession of the unit. Condo associations, homeowners associations do that all the time, no matter if it's in foreclosure or not. If they are not getting paid, they file a forcible action to get possession of the unit so they can rent it out and mitigate their damages. So that's not unusual. What is unusual is that's still pending. It hasn't resolved at this point. Under the circumstances, it's been disputed. But the fact of the matter is, in that action, they're seeking not possession. They want the money. They want a judgment against city mortgage for whatever the back assessments are now probably upwards of $100,000. Who knows what they are. But the back assessments are not the same as the deconversion issue. The back assessment issue, again, counsel stood here and said they didn't know about it until after on the 94-2010 order amending the judgment, which was after the case. What was there for us to do at that point when we found out about the back assessments and when we found out and didn't even know about the deconversion at that point? There was nowhere in any pleading about the deconversion process that Ms. Cummings says has been going on for two years. But the fact of the matter is that what counsel says here that we're to be faulted for, oh, well, we didn't object. The court found that under the documents that they presented after the sale had been confirmed, the court found that, okay, they do have a superiority for the assessments. Turn that on the other hand, they didn't object when judgment was entered. We were entitled to enter to rely upon the judgment that says that they're not entitled to back assessments. They didn't come into court and object to it. Well, to put it in their answer, we want our assessments. The court found otherwise. And they didn't come in to say, no, no, no, we have a superiority here and here's the amount. Typically what happens is they prove it up with an affidavit and say here's how much we're owed and they would be claiming a superiority. And I've seen that. This is the only case I've seen in all my years that actually there is a superiority and that's only because of the documents that they had, which were apparently no objection by city when the mortgage was issued. But that's neither here nor there. But, again, the same thing that they're faulting us for. They didn't come in. They didn't do anything. They sat on their rights. The same thing could be said of them when they came in, for the judgment, which stood as of the date of sale and stood as the date of confirmation. And they didn't come in in counsel's own admission here. And, by the way, my affidavit stands unrebutted, which was presented to the trial court. I don't know how counsel could say it was not, but counsel wasn't in the trial court. I was. But that affidavit was considered by Judge Simcoe and it was unrebutted, that we had no notice. Well, but didn't your petition also contain it as an exhibit, Cummings' email indicating that I've been advising city mortgage of this over the last two years? Again, that's after the fact. It's in October. It says, oh, I've sent notice. Well, I mean, it's a confirmation of what she says I've been doing for two years past. My affidavit says that city mortgage and myself as counsel for plaintiffs, and I was in on this case since 2009, we never got notice. That affidavit on the record before, Your Honor, stands unrebutted. So her email that I attached to my 214-01, Your Honor, was in October of 2010, well after, and that was the first time we learned about the deconversion that we would have to, well, they call it a special assessment, we would have to buy our unit back, counsel now says, for $180,000. So had they come in and represented that to the court, it would have been a representation to us as well. But the fact of the matter is that as I stand here and counsel says, oh, no, it's still not been deconverted, there's nothing in the record. Why? Because they didn't want it in the record. They didn't want anybody to know about the deconversion. There's not one single word in the record about the deconversion and when it took place or anything. They did this for one reason and one reason only. They wanted us to get this unit and they want a money judgment against them for whatever reason and for whatever amount. And we're still dealing with the eviction action, which will, I guess, be resolved after the disposition of this case, one way or the other, but that was for possession only at one point and now they also want a money judgment. But the fact of the matter is that we haven't sat on our rights. We did not, and again, I will tell you, because I personally should have gotten notice as the foreclosing attorney, I got no notice whatsoever of any deconversion process and the first time I ever heard from Ms. Cummings was in October after the fact. And I ask you, they didn't come in until after confirmation. What could we have done except come in on a 214.1 to say, gee, had we known all this? Because up to that point, you have to remember, the judgment stood. The order confirming sale said we are ahead of everybody. We terminate their rights. We had no other option but to come in on a 214.1. Counsel, in light of your opponent's representations, doesn't your standing argument fail? Judge, again, as I stood here, there was nothing in the record whatsoever about when it was deconverted or wasn't deconverted because they didn't raise it. They didn't plead it. They didn't even say anything in opposition to my affidavit on the 214.1 petition. And the fact of the matter is that whether it is or it isn't, it still needed to be disclosed. But your standing argument. Well, I don't know that it would. I mean, what is it now? He's saying that it's still not completed. That's the first time I'm hearing it. The letter from Ms. Cummings says in March of 2010 it was voted to deconvert. You're owners, right? You're getting notice of the meetings. You're apprising yourself of what's going on with your interest. Didn't get a single notice. Not only that, but. . . And still to this date you're not getting notices? Nope. Have you taken any affirmative action in that regard? Well, we're trying to make. . . Other than that. . . Affirmative action, we're trying to make fairly affirmative. To apprise yourselves of the status of the process. That's what I'm saying. I appreciate your glibness, but my point remains. I understand that. And at this point now, we're not getting any notices. What is there for us to do at this point? We want to vacate and say that we aren't going to pay $180,000 to buy this unit back from the co-op to become a condominium. And like I said, a good portion of their back assessments are attorney's fees. The fact of the matter is, whether or not we knew at the end of the day, and the end of the day being after confirmation, that, yeah, we were going to be responsible for the back assessments is one thing. But the reason we came in, that the newly discovered evidence, aside from the fact of that after the confirmation order, which is the final order, is the fact that it was going to be deconverted. So it's two prongs, as you understood. We have nothing. We bought nothing. And we had no choice but to come in after the case was over because that's the first time we found out about it. My affidavit stands unrebutted. We did not get notice. That was the first time I ever talked to Ms. Cummings. And the first time my client had ever heard of her. And they had an opportunity to rebut that affidavit and did not. They could have come in and said, look, here's the copies of those notices you got. There aren't any. Why? Because they gave us the transfer of the units prematurely. And for one purpose only. They had no authority to do that. What if the question was. . . Thank you, counsel. Excuse me. Thank you. We'll take the matter under advisement and you'll hear from us in the next several weeks.